**BECK v. CLEETON et al.**

No. 2483.

Court of Civil Appeals of Texas. El Paso.

Jan. 8, 1931.

Rehearing Denied Feb. 5, 1931.

C. G. Whitten and D. M. Oldham, both of Abilene, for appellant.

Kirby, King & Overshiner, of Abilene, for appellees.

PELPHREY, C. J.

During the month of December, 1928, an agreement was entered into between appellant and Sam J. Cleeton relative to the sale of an oil and gas lease on 209 acres in Fisher county, Tex., belonging to appellant.

Appellant gave Cleeton the right to sell the lease on the land for $6 per acre, and agreed to pay a commission of 50 cents per acre. The right to sell was limited to thirty days, and, in order to expedite a transfer, appellant executed a lease on the land to Cleeton. About January 15, 1929, Cleeton having been unable to dispose of the lease, he agreed to purchase the lease himself, at $5.50 per acre. The lease which had been already drawn, together with a draft for $1,149.50, payable to appellant and executed by Cleeton, were placed in escrow in the Abilene State Bank with the following agreement.

"Escrow Agreement.

"Whereas, James B. Beck of Sylvester, State of Texas, hereinafter called "Lessor" (whether one or more) has signed and executed in favor of Sam J. Cleeton hereinafter called "Lessee", an oil, gas and mineral lease covering the following described land situated in * * * County, State of Texas, to-wit:

"All of 54.9 acres of Thomas Ayres Survey

"All of 72.4 acres of Geo. A. Crovles survey

"All of 82.5 acres of Andrew McMickey under name of James B. Beck of Fisher County. Vol. 67-P. Fisher Co. Vol. 67-P.

614, Fisher Co. which lease is hereto attached, and

"Whereas, the lessor has agreed to lease said premises to the Lessee in accordance with said lease, and the Lessee has agreed to purchase said lease for the consideration therein named, subject to approval of title by its attorneys.

"Now, Therefore, it is hereby agreed as follows:

"First: Said lease and a draft for the consideration of Eleven Hundred Thirty-Three Dollars ($1133.00), recited therein, together with a copy of this agreement, are deposited in escrow in the Abilene State Bank of Abilene, Texas.

"Second: Lessor agrees to obtain and deliver to Lessee at Abilene State Bank within one day (1) from the date hereof a complete abstract of title certified to the date of said lease by some competent abstract company or abstractor covering the above property.

"Third: There is hereby granted to the Lessee a term of Fifteen days (15) from the receipt of the aforesaid abstract within which to examine the title to the land aforesaid, and if title to said land is approved by Lessee's attorneys the said bank, upon receipt of notice from Lessee that title has been approved, shall deliver to Lessee the lease aforesaid and shall deliver to Lessor the aforesaid draft for the consideration of Eleven Hundred Thirty Three Dollars ($1,133.00). In the event attorneys for Lessee find any defects in said title, or find liens, mortgages, or other claims, against said property, Lessee may, at its option, notify Lessor of said defects, in which event Lessor shall have Ten days from the date of notice of such defects, in which to cure said defects and to meet such requirements as said attorneys shall make, and Lessor especially binds and obligates himself to make diligent effort to comply with the requirements of said attorneys and to cure said defects.

"It is further understood and agreed that in the event of failure of Lessor to comply with the requirements of the attorneys of Lessee in an effort to cure any defects in the title, or in the event that Lessee shall not elect to notify Lessor of the defects mentioned in said attorney's opinion, then Lessee shall have the option for five days, counting from the date of the opinion rendered by said attorneys, copy of said opinion to be sent to escrow keeper, within which to cure the title. If on or before the expiration of said period of time title is approved the bank shall deliver the lease to the Lessee and the consideration to the Lessor as aforesaid.

"Fourth: In the event an examination by the attorneys for Lessee discloses that the Lessor's title to the land, or any part thereof, covered by the lease is, at the expiration

of the time so allowed, still defective, or is encumbered to the prejudice of this lease, then in that event the Lessee shall have the right at his option either to reject or to accept the entire lease, or any part thereof, and in case of rejection of all or any part of said lease, to demand and receive from the bank aforesaid the entire sum deposited, or an amount in proportion to the acreage rejected, or if Lessor own a less interest in said lands and the minerals therein and thereon than the entire and undivided fee simple estate therein, then Lessee shall at his option have the right to accept same, provided, however, that Lessor shall receive only such proportion of the sum deposited in escrow as Lessor's interest bears to the whole thereof, and Lessee shall be entitled to demand and receive from the bank aforesaid an amount in proportion to the interest now owned by Lessor. If, on account of any of the above reasons, Lessee shall elect to accept only a part of said lease, Lessor agrees to execute a new lease covering such part of said lease, said new lease to provide for some proportionate rentals and to be upon same form as to royalties and otherwise."

While the above agreement recites that the draft was for the sum of $1,133, it is undisputed, and the draft introduced in evidence shows it to be for $1,149.50.

In connection with the transaction, the following letter was given to appellant:

"James B. Beck, Sylvester, Texas.

"Dear Mr. Beck: This is to advise that we will pay draft in your favor for $1149.50 signed by Sam J. Cleeton when title to 209 acres in Fisher County is approved by Mr. Cleeton's attorney. This draft is to cover lease described in escrow agreement executed today by you and Mr. Cleeton.

"Yours very truly,

"Guy W. McCarty, Cashier."

Appellant brought suit against Cleeton and the Abilene State Bank seeking to recover $1,149.50 or such amount as might be shown by the draft, alleging that appellees never submitted to him any written objections to the title to his lands, and that Cleeton thereby became liable to him for the amount of the draft placed in escrow, which he has failed and refused to pay; that the bank by virtue of its written acceptance of and promise to pay the draft became a party to the contract, and it became its duty to see that the abstract was examined, and that the terms of the contract were performed, but that it also has refused to pay appellant the amount of the draft.

The bank answered by general demurrer, general denial, and specially pleaded its nonliability because it became bound only to pay the draft upon the title to the land being approved by Cleeton's attorneys, which was never done, and because, under the agreement, Cleeton was to get a clear and marketable title which appellant did not have; that by reason of the condition of the title Cleeton did not become bound, and therefore the bank could not be; that if the draft was guaranteed by any officer of the bank such act was without authority; and, because appellant and Cleeton voluntarily canceled the agreement, withdrew the escrow papers and abandoned the trade.

Cleeton answered by general demurrer, general denial, and, by way of special defense, alleged that he should not be held liable because the title was not good, and that the property was incumbered by liens; that he notified appellant through his representative of the existence of the liens; that the defects were not cured; and that the trade was voluntarily abandoned by appellant.

At the conclusion of the testimony the trial court instructed a verdict in favor of appellees and rendered judgment that appellant take nothing. Beck has appealed.

### Opinion.

Appellant complains of the action of the trial court in instructing a verdict for appellees; in permitting appellant to be interrogated about how many mortgages and liens were against the property on January 15, 1929; and in permitting the introduction of the copy of a letter from Cleeton to appellant.

Appellees contend that the judgment should be affirmed for the following reasons:

(1) That appellant, not having sued for specific performance or for damages, should not recover; (2) that Cleeton, having notified appellant of his rejection of the title within fifteen days after receiving the abstract, would not be liable; (3) that the contract leaving the matter of notice to the lessor by the lessee optional with lessee and giving lessor five days to cure defects, if not notified by lessee, and there being no evidence that lessor attempted to cure any of the defects, he should not recover; (4) that appellant should not recover against the bank, because their obligation was to pay the draft upon condition that the title should be approved by Cleeton's attorneys, and, the evidence being undisputed, that same was not approved.

We are of the opinion that the first ground urged by appellant is well founded, and that the judgment must be reversed.

As we understand the contract, appellee had fifteen days in which to examine the title and point out any defects, found to exist, to appellant; that, upon being advised of any defects, appellant would have ten days within which to cure them.

The point of controversy between the parties in the present suit seems to be whether appellee Cleeton did point out defects in the title to appellant.

Appellant alleges that Cleeton utterly failed to notify him of any within the time prescribed, and therefore became bound for the amount of the draft, while Cleeton alleges that he did so notify appellant, and that he made no effort to cure the defects pointed out thereby absolving him from liability.

Ed. B. Beck, who appellant testifies was his representative in the matter, testified that he never received any letters or communication from either of the appellees objecting to the title. According to his testimony the only communication he ever received as to any objections to the title was in a conversation over the phone with Cleeton, who, he says, told him that his (Cleeton's) lawyers were afraid of the title, and that such conversation took place after the fifteen-day period had elapsed. Therefore, if this witness is to be believed, Cleeton never complied with that part of his agreement to notify appellant of defects in the title.

██ It certainly cannot be said that merely telling the witness over the phone that his lawyers were afraid of the title would be a compliance with his agreement, for, if appellant was to cure the defects as found by Cleeton's lawyers, he would necessarily have to know what defects had been found by them.

On the other hand, Cleeton testified that he took the abstract to a lawyer in Abilene for examination; that on the third or fourth night after receiving the abstract, in a conversation with Ed. B. Beck, he told him that his lawyer did not consider the title good, and that therefore the deal could not be consummated; that he further told him that the land was heavily incumbered with liens; that, the land being in three different surveys, it would be necessary to run the field notes in the three tracts, and that for these reasons the title was not good; but that he would write him a letter the following morning showing the objections which had been raised; that he did write the letter setting forth the objections and mailed it on the afternoon of January 29, 1929, in order for it to catch the 7:30 train out of Abilene. A copy of the above letter was introduced in evidence over the objection of appellant, who resisted its introduction for the reason that the original had not been accounted for.

██ We think the copy was erroneously admitted, no demand having been made on appellant to produce the original; but regardless of whether or not it be considered, there was a conflict in the evidence as to whether Cleeton had advised appellant as to defects in the title which should have been passed upon by the jury.

The contract further provided that, in case Cleeton elected not to notify appellant of defects in the title, he (appellant) would have the option of five days, counting from the date of the opinion rendered by Cleeton's attorneys, a copy of which was to be sent to escrow keeper, within which to cure the title.

There is no evidence here to show that any opinion was ever sent to the escrow keeper, and Cleeton testified that no opinion on the title was ever written.

Appellant certainly had the right, if he was not notified within the fifteen-day period by Cleeton, to his five days in which to cure any defects as shown by the attorney's opinion, which was to be sent to the escrow keeper.

██ As far as the Abilene State Bank is concerned, we think the verdict was properly instructed.

Conceding that the cashier had the authority to bind the bank by his acceptance of the draft, the agreement was made upon the condition that the title should be approved by Cleeton's attorney, an event which never happened.

Appellant, not having shown that the contingency had happened upon which the bank's liability depended, could not recover from it.

For the reasons above stated, the judgment in favor of the Abilene State Bank will be affirmed, while the judgment in favor of appellee Cleeton will be reversed, and the cause remanded.